(115 So. 441)

No. 26595.

### WHITTINGTON et al. v. HEIRS OF PEGUES.

May 23, 1927.  On Rehearing Jan. 18, 1928.

*(Syllabus by Editorial Staff.)*

1. **Evidence ⬡⟲462—Parol evidence held inadmissible to show that transaction, purporting in deed to be sale, was intended as donation of land (Rev. Civ. Code, arts. 1536, 1900, 2276).**

In action to have plaintiffs declared owners of land conveyed by widow, which had been acquired by grantor under sale from her mother, parol evidence is inadmissible under Rev. Civ. Code, arts. 1536, 1900, 2276, to show that parties intended donation rather than sale in transaction purporting in deed to be sale, under which widow acquired property.

2. **Husband and wife ⬡⟲254—Land purchased by married woman, with authority of husband, is for benefit of community (Rev. Civ. Code, art. 2402).**

Land acquired by married woman under transaction purporting in deed to be sale to wife, "aided and authorized by her said husband," *held*, on death of husband, not separate property of widow, it being part of community, for price of which husband alone was liable, and as to which she had only half interest, under Rev. Civ. Code, art. 2402.

3. **Husband and wife ⬡⟲255—Land purchased by wife, authorized by husband, remains community property, notwithstanding payment from wife's separate estate.**

Where married woman, authorized by husband, purchased real estate, fact that purchase was for benefit of community is not affected by payment of purchase price out of separate estate of wife, though such subsequent event would give rise to claim for reimbursement on part of wife against husband.

4. **Appeal and error ⬡⟲173(5)—Plea of prescription acquirendi filed in Supreme Court cannot be considered, where evidence showed no possession (Rev. Civ. Code, arts. 3464, 3465).**

Where evidence, in action to have plaintiffs declared owners of certain lands, did not show possession by plaintiffs, their plea of prescription acquirendi filed in Supreme Court cannot be considered, for, though prescription may be pleaded at any time even on appeal, it cannot be pleaded on appeal, unless proof of it appears from evidence in inferior court, under Rev. Civ. Code, arts. 3464, 3465.

#### On Rehearing.

5. **Appeal and error ⬡⟲715(1)—Supreme Court held to have no original jurisdiction to consider documents filed as evidence of defendants' unconditional acceptance of succession of mother who died pending appeal.**

Where widow died pending appeal by plaintiffs in their action to be declared owners of land under conveyance from her, which action had been brought against widow's heirs, reviewing court has no original jurisdiction to consider certified copies of defendants' petition purporting to accept succession of mother as evidence of unconditional acceptance, on theory that they thus became warrantors of title.

6. **Appeal and error ⬡⟲1178(6)—In action for title to land against grantor's heirs, case may be remanded for evidence of defendants' acceptance of succession of mother, who died pending appeal.**

Where widow died pending appeal by plaintiffs in their action to be declared owners of land under conveyance from widow, which action had been brought against widow's heirs, case will be remanded for admission of evidence showing defendants' acceptance of succession of their mother and determination whether they thus became mother's warrantors of title in dispute and are precluded from contesting such title.

Appeal from Second Judicial District Court, Parish of Bossier; Robert Roberts, Judge.

Action by R. D. Whittington and others against the heirs of W. C. Pegues. From the judgment, defendants appeal. Case remanded, with directions.

J. M. Grimmet and Cecil Morgan, both of Shreveport, for appellants.

Murff & Perkins and W. A. Mabry, all of Shreveport, for appellees.

ST. PAUL, J. Plaintiffs bring this suit to have themselves declared owners of certain lands described in their petition. They claim title under a purchase made by R. D. Whittington et al. from Mrs. Juanita R. Pegues, widow of William C. Pegues.

The defendants are the heirs of said William C. Pegues, husband of said Juanita R. Pegues.

### I.

The lands in controversy were acquired by said Mrs. Juanita R. Pegues during her marriage with said William C. Pegues, and during the community of acquets and gains which existed between her and her husband. They were sold by said Mrs. Juanita R. Pegues after the death of her said husband, but without the concurrence of his heirs.

Hence the sole question involved is whether said lands were the separate property of said Juanita R. Pegues, in which she alone had any interest, or belonged to the community between herself and her husband, in which (after his death) she had only a half interest, and the other half interest then belonging to his heirs, the defendants.

### II.

The defendants are four in number, all children of said William C. Pegues, to wit: (1) Mrs. Lila Pegues, wife of B. F. Carmichael; (2) Mrs. Willie Pegues, wife of John Prudhomme; (3) C. J. Pegues; and (4) Clyde Pegues.

The last named defendant made no defense to the suit, and has not appealed. The other defendants made a vigorous defense, and have appealed from the judgment below which declared the lands to be the *separate* property of said Mrs. Juanita R. Pegues, plaintiffs' author.

### III.

The circumstances under which Mrs. Juanita R. Pegues, wife of William C. Pegues, ac-quired the lands in controversy, are as follows:

She was one of the four children of Mrs. E. M. McGuigan, widow of James McGuigan. Her mother owned certain lands, including the lands in controversy. She divided her said lands into four equal (or nearly equal) parts, and the lands in controversy formed one of said parts. To each of her said four children she deeded one of said four parts; the lands in controversy being deeded to her daughter "Juanita Rosalie Pegues, wife of William C. Pegues, * * * aided and authorized by her said husband," and the other three parts being deeded, severally, to her other three children.

### IV.

Each of said deeds purports to be a *sale*, and each declares that "this sale is made for the consideration of the sum of $1,000, payable as follows: In one note of said purchaser, dated with this act, to order of this vendor, due one day after date, which note bears 8 per cent. per annum interest from date, * * *" which note, duly identified with the deed and secured by mortgage on the lands deeded, was delivered to the grantor and retained by her until her death; at which time her said four children each received back his or her own note.

### V.

The foregoing facts are undisputed, and speak for themselves.

[1] But plaintiffs attempted, and were allowed (over the objections of the defendants), to show by parol evidence that said deeds were not *intended* as sales but as *donations*.

The purport of the testimony thus allowed, so far as it bears on *the intention of the parties* at the time, is as follows:

By Mr. J. B. Whittington (a son): "It [the purpose of surveying the land and dividing it into four lots] was to give the land to her [Mrs. McGuigan's] children, because I was her agent and advised her to do that. * * * I told her I was not willing to transfer the land absolutely,

that she must retain something in case she ever needed money, so that she would have it; * * * that is why she took the $1,000 note, and in case she needed the money she could take it out of the property. * * * Q. If Mrs. Mc-Guigan had needed that money, she would have been able to have gotten it from Mrs. Pegues? A. I suppose so; * * * she was entitled to it."

By Mrs. Lula Adair (a daughter): "Q. You gave your note for what purpose? A. For my mother, if she ever needed it to live on."

### VI.

We think this evidence should have been excluded. In Loranger v. Citizens' Nat. Bank, 162 La. 1054, 111 So. 418, we said (in fine):

"It is clear that parol testimony is not admissible to prove a donation inter vivos [of immovable property]"—citing R. C. C. art. 1536.

And we said, a little above that, in the same case:

"To prove by parol evidence a true and sufficient consideration, in order *to sustain the contract* made between the parties, is always permissible, where the rights of third parties are not affected thereby. * * * But to resort to such evidence for the purpose of *contradicting or varying the contract entered into, in order to substitute in its place a contract of a dissimilar nature*, is plainly reprobated by the textual provisions of our Code"—citing R. C. C. arts. 1900, 2276. (Italics by this writer.)

### VII.

[2] But, even when admitted, the evidence above set forth does not establish, but on the contrary very clearly *negatives*, any intention on the part of Mrs. McGuigan to *donate* the lands; for she took from her grantees an obligation to pay the price stipulated, enforceable (at least) "in case she ever needed money," which she retained until her death. And hence the most that can be said of the transaction is that she *sold* the lands to her children with the intention not to demand the price, unless she should need it "to live on."

### VIII.

But all property acquired by either spouse during the marriage "by purchase, or in any other similar way," i. e. by *onerous contract* of any kind (see R. C. C. arts. 1773, 1774), falls into the community, unless paid for with separate funds of one of the spouses. R. C. C. art. 2402.

And, hence, "a purchase made exclusively on credit by a married woman, who is not shown to have been separate in property from her husband, or to have separate property yielding * * * revenue, of which she has retained the administration, will be held as a purchase by the community for which the wife was prohibited from binding herself or her property." Succession of Andrus, 34 La. Ann. 1063. Such a purchase by a married woman, when authorized by her husband, is a purchase made for the benefit of the community. Forbes v. Layton, 34 La. Ann. 975. And in that case the husband *alone* is liable for the price. Graham v. Thayer, 29 La. Ann. 75.

### IX.

[3] Nor does it matter in such case that the obligation of the community for the purchase price was ultimately discharged out of the separate estate of the wife. Such subsequent event cannot change the status of the property (as community property) impressed upon it at the time of its acquisition. It gives rise only to a claim for reimbursement on the part of the wife against the husband. Cf. R. C. C. arts. 2390, 3319, subd. 3, 3285.

### X.

[4] Plaintiffs have filed in this court a plea of prescription *acquirendi causa*. To support a prescription of that sort there must have been possession during the time fixed by law, and that possession must of course be shown by evidence.

We find no evidence in the record on the question of possession; and hence the plea cannot be considered, for, although prescription may be pleaded at any time, even on appeal, nevertheless it cannot be pleaded on ap-

peal, "unless the proof of it appear from documents exhibited or testimony taken in the inferior court." R. C. C. arts. 3464, 3465.

### Decree.

The judgment appealed from is therefore reversed as to the appellants Mrs. Lila Pegues, wife of B. F. Carmichael, Mrs. Willie Pegues, wife of John Prudhomme, and C. F. Pegues; and plaintiffs' demand is now rejected as to them and as to their interest, as hereinafter set forth, in the property hereinafter described.

It is further ordered that said appellants have judgment in reconvention against plaintiffs (to wit, R. D. Whittington; J. M. Whittington; Mrs. Viola McCranie, widow of T. K. McCranie, individually and as tutrix of the minor heirs of T. K. McCranie; Mrs. Tommie McCranie, wife of A. C. Whittington; Mrs. Lyde McCranie, wife of C. H. Wallace; Miss Florence McCranie, a femme sole; Mrs. Nettie McCranie, wife of R. D. Whittington; Mrs. Katie McCranie, wife of Chas. O'Quinn; Mrs. Bessie McCranie, wife of E. H. White; and Virgil McCranie), recognizing said appellants, hereinabove named, as owners of three undivided fourths of one undivided half (i. e., one undivided fourth of one undivided half, to each of said appellants), in the following property, as the same is described in plaintiffs' petition, to wit:

A tract of land known as lot 3 of the partition of the lands of this vendor made by G. D. Alexander, surveyor, as per survey and map of the same hereto annexed as part of this act of sale, and more particularly described as follows: The N. E. ¼ of N. E. ¼; also a strip off the north end of the S. E. ¼ of N. E. ¼, being 3.16 chains N. by 20 chains E., and parcel of land bounded north by said strip, west by ditch, south by halfway dividing line of said 40 acres, and east by section line between sections 4 and 5, the last piece containing 9.30 acres and lying in section 5;

also all that part of fractional N. W. ¼ of section 4 lying west of Benoist bayou and continuing down said bayou until it reaches a point 6.34 chains north of the south boundary of the S. W. ¼ of N. W. ¼ of section 4, containing 84.74 acres of cleared land; also the S. E. ¼ of S. W. ¼ of S. W. ¼ of section 4 containing 10 acres of woodland—containing in all 94.74 acres, more or less, together with all buildings and improvements thereon, and situated in Bossier parish, La.

It is further ordered that said plaintiffs pay all costs of both courts.

O'NIELL, C. J., concurs in the decree.

### On Rehearing.

LAND, J. [5, 6] On application for rehearing made by plaintiffs, it is alleged that, since the appeal was lodged in this court, Mrs. Juanita R. Pegues, warrantor of plaintiffs' title, has died; that her succession has been opened; and that defendants, her heirs, have accepted her succession unconditionally, and have been sent into possession of all of the property of her estate.

Based upon this alleged state of facts, and upon the authority of Berry v. Wagner, 151 La. 464, 91 So. 837, plaintiffs have filed and tendered in this court a plea of estoppel, and contend that, having accepted unconditionally the succession of their mother, defendants became her warrantors of the title in dispute, and are precluded from contesting in this case the title which the de cujus made and warranted to plaintiffs.

A rehearing was granted for the sole purpose of determining whether the case should be remanded to take evidence as to this issue and to have same passed upon in the court below.

In support of their plea of estoppel, plaintiffs have filed in this court certified copies of the petition of defendants purporting to accept purely and simply the succession of

their mother, and also of the judgment recognizing defendants as her heirs, and sending them into possession of the estate of the deceased.

This court has no original jurisdiction to consider such documents as evidence of the unconditional acceptance of the succession of the decedent by defendants. Ryland v. Harve M. Wheeler Lumber Co., 146 La. 787, 84 So. 55; State v. Police Jury of Parish of St. Charles, 28 La. Ann. 272.

For this reason, and for the reason that we consider the plea of estoppel as presenting a serious question, it becomes necessary to remand the case.

It is therefore ordered that our decree be vacated, and that this case be remanded to the Second judicial district court for the parish of Bossier, with directions to the presiding judge to admit evidence, pro and con, as to such alleged acceptance of the succession of their mother by defendants, and to determine whether the plea of estoppel tendered herein by plaintiffs is well founded or not. The right of defendants to make all proper defenses, and of plaintiffs or defendants to appeal from the judgment rendered, is hereby reserved.